

# The Attorney General of Texas

December 21, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. State Office Building
Austin, Texas   78774

Opinion No. MW-413

Re:  Interpretation of House
Bill No. 3 relating to regula-
tion and taxation of bingo
games

Dear Mr. Bullock:

You have requested our opinion regarding certain provisions of
House Bill No. 3, recently enacted by the Sixty-seventh Legislature.
V.T.C.S. art. 179d, Acts 1981, 67th Leg., 1st C.S., ch. 11, at 85.
The statute authorizes various local jurisdictions to legalize bingo
games for charitable purposes and to impose a two percent gross
receipts tax thereon. You first inquire about an apparent conflict
between sections 11 and 13, which provide, in pertinent part:

> Sec. 11.  (a)  The conduct of bingo games
> authorized under this Act is subject to the
> restrictions prescribed by this section regardless
> of whether the restrictions are contained in a
> local ordinance.
>
> . . . .
>
> (e)  A prize may not exceed the sum or value
> of $500 in any single game of bingo.
>
> (f)  A series of prizes on any one bingo
> occasion may not aggregate more than $2,500.
>
> . . . .
>
> Sec. 13. . . . .
>
> (b)  The comptroller of public accounts shall
> issue to an applicant a license for the conduct of
> bingo, on payment of a $50 license fee, if the
> comptroller determines that:
>
> . . . .

(5) no prize will be offered or given in excess of the sum or value of $1,000 in any single game and that the aggregate of all prizes offered and given in all of the games conducted on a single occasion under the license will not exceed the sum or value of $5,000.

Id. at 90, 92. You ask whether section 11 governs the limits under which a license may be issued.

Section 11 imposes restrictions on the actual conduct of bingo games, among which are that a prize may not exceed the value of $500 in any single game and that a series of prizes "on any one bingo occasion" may not exceed the value of $2500. Failure to comply with such restrictions is made an offense by section 36(a)(5) of the statute. Id. at 98-99.

Section 13, on the other hand, controls the issuance of a license for the conduct of bingo games. The comptroller is required to issue a license to an applicant, on payment of a $50 fee, if the comptroller determines, inter alia, that "the games are to be conducted in accordance with this Act" and "no prize will be offered or given in excess of the sum or value of $1,000 in any single game and that the aggregate of all prizes... on a single occasion" will not exceed $5000. Section 13(b)(3), (5).

Since section 11 controls the actual conduct of bingo games, and section 13 controls the issuance of licenses, it is clear that the two sections serve different purposes. As a result, we do not believe that their provisions are necessarily in conflict. The comptroller should issue a license to any applicant whom he has determined has complied with the requirements of section 13. We note, moreover, that section 13(b)(3) requires the comptroller to determine that the games will be conducted in accordance with the act, including the section 11 prize limitations. Games which comply with the section 11 limits will necessarily be within the limits stated in section 13(b)(5).

You next ask:

2. If a justice precinct of a county legalizes bingo but the county commissioners court does not impose the tax, may a municipality impose a tax on a portion of the justice precinct within the municipality?

3. If a county legalizes bingo but the county commissioners court does not impose the tax, may a municipality impose a tax on that portion of the county within the municipality?

> 4.  If the answer to either 2 or 3 is 'yes', must the municipality hold an election to impose the tax?
>
> 5.  If the municipality imposes the tax, may the commissioners court thereafter impose the tax in the county or justice precinct?
>
> 6.  If the answer to (5) is 'yes', is the county then entitled to receive the 2% tax to the exclusion of the city?

Section 3 provides:

> Sec. 3.  (a)  The commissioners court of a county that has voted to legalize bingo or in which a justice precinct has voted to legalize bingo by order may impose a two percent gross receipts tax on the conduct of bingo games within the county.
>
> (b)  The governing body of a municipality that has voted to legalize bingo by ordinance may impose a two percent gross receipts tax on the conduct of bingo games within the municipality.
>
> (c)  Any municipality within which one or more justice precincts have voted to legalize bingo and which municipality has not voted to prohibit bingo may impose a two percent gross receipts tax on the conduct of bingo games within the municipality.
>
> (d)  Any gross receipts otherwise subject to tax by a county are exempt from the municipal tax if a tax has been imposed on the gross receipts by a county.

V.T.C.S. art. 179d, §3, Acts 1981, 67th Leg., 1st C.S., ch. 11, at 87.

Section 3(c) permits a municipality to impose the gross receipts tax in those justice precincts within the municipality that have voted to legalize bingo, provided the municipality itself has not voted to prohibit bingo.  If the county has legalized bingo but the commissioners court has not imposed the tax, the municipality may impose the tax in that portion of the county within the municipality, provided again that the municipality has not voted to prohibit bingo. The municipality is not required to hold an election to impose the tax under these conditions.

If the municipality imposes the tax, the commissioners court may later impose the tax in the entire county or within one or more

justice precincts, provided the county or the particular justice precinct has acted to legalize bingo. Section 3(a). Under such circumstances, all gross receipts are exempted from the municipal tax, and the county is thus entitled to receive the tax to the exclusion of the city. Section 3(d).

Your last question is whether an authorized organization located outside an area which has legalized bingo can qualify for a license within the legalized area. Section 12 of the statute prescribes the requirements for a license application and section 13 describes the conditions under which the comptroller must issue a license. No provision thereof would prevent an authorized organization which is otherwise qualified from obtaining a license merely because it is located outside an area which has legalized bingo.

## S U M M A R Y

Prior to issuing a license to conduct bingo games, the comptroller must determine that the applicant will comply with the provisions of section 11 of House Bill No. 3. If a justice precinct of a county legalizes bingo but the commissioners court does not impose the tax, the municipality may impose a tax on the portion of the precinct in the city without holding an election. If the county legalizes bingo but does not impose the tax, the city may impose the tax on the portion of the county within the municipality without holding an election. If the municipality imposes the tax, the commissioners court may later impose the tax in the entire county or within one or more justice precincts. An authorized organization located outside an area which is legalized may obtain a license.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Sherrita Lee
Jim Moellinger